UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2776 PSG (PJWx) | Date | August 9, 2016 |
|---|---|---|---|
| Title | Philip Godfrey v. Financial Industry Regulatory Authority, Inc. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** Order GRANTING Motion to Remand

Before the Court is Plaintiff Philip Godfrey's ("Godfrey") motion to remand. Dkt. #23. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. After considering the moving, opposing, and reply papers, the Court GRANTS the motion and REMANDS the case to state court.

I.      Background

From March 22, 1983 to January 12, 1988, Godfrey was a registered broker with member firms of the National Association of Securities Dealers ("NASD"), the predecessor of Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"). *Compl.* ¶¶ 9–10. In 1988, Godfrey purchased securities for members of his family. *Id.* ¶ 12. Later that year, Godfrey's then-wife claimed that Godfrey had improperly converted the funds for his own use and benefit. *Id.* ¶ 13. NASD filed a complaint against Godfrey on the basis of the allegations made by Godfrey's then-spouse. *Id.* ¶ 16. Although Godfrey alleges that he did nothing wrong, he entered into a settlement with NASD. *Id.* ¶¶ 14–18. Godfrey's complaint and settlement information is currently included in FINRA's Central Registration Depository ("CRD"), and is available to the public through FINRA's "BrokerCheck" feature. *Id.* ¶¶ 10–11, 16–18. Godfrey alleges that his record is otherwise clean. *Id.* ¶ 18.

On March 25, 2016, Godfrey filed an action for expungement and declaratory relief in the Superior Court for the County of Los Angeles. Dkt. #1-1. FINRA timely removed to this Court. Dkt. #1. On May 23, 2016, Godfrey filed the present motion to remand. Dkt. #23.

II.     Legal Standard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2776 PSG (PJWx) | Date | August 9, 2016 |
|---|---|---|---|
| Title | Philip Godfrey v. Financial Industry Regulatory Authority, Inc. | | |

Generally, subject matter jurisdiction is based on the presence of a federal question, *see* 28 U.S.C. § 1331, or on complete diversity of citizenship between the parties, *see* 28 U.S.C. § 1332. Section 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." If at any time before the entry of final judgment it appears that the Court lacks subject matter jurisdiction over a case removed from state court, it must remand the action to state court. *See* 28 U.S.C. § 1447(c); *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991). There is a "strong presumption" against removal jurisdiction, and the party seeking removal always has the burden of establishing that removal is proper. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). If there is any ambiguity as to the propriety of removal, federal jurisdiction must be rejected. *See id.*

III.  Discussion

FINRA removed "on the grounds that this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and that the state court action is preempted by federal law." *Notice of Removal* 1, 4–5. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). California has a cause of action for expungement of public records. *Lickiss v. Fin. Indus. Regulatory Auth.*, 208 Cal. App. 4th 1125, 1135 (2012). Godfrey's two causes of action are for expungement under California law and declaratory relief under California law. *Compl.* ¶¶ 20–28. Thus, federal jurisdiction is not presented on the face of Godfrey's complaint.

This does not, however, end the inquiry. "The artful pleading doctrine is a corollary to the well-pleaded complaint rule, and provides that although the plaintiff is master of his own pleadings, he may not avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (alteration and internal quotation marks omitted) (quoting *Hansen v. Blue Cross of Cal.*, 891 F.2d 1384, 1389 (9th Cir. 1989)), *as amended* (Sept. 22, 2003). Courts have used the artful pleading doctrine in (1) complete preemption cases, and (2) substantial federal questions cases. *See id.* (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64–65 (1987), and *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27–28 (1983)). FINRA argues that federal jurisdiction is proper under both complete-preemption and substantial-federal-question theories. *Opp.* 7–15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2776 PSG (PJWx) | Date | August 9, 2016 |
|---|---|---|---|
| Title | Philip Godfrey v. Financial Industry Regulatory Authority, Inc. | | |

     A.     <u>Statutory Background, FINRA Rules, and Prior Case Law</u>

     FINRA "is the primary regulatory body for the broker-dealer industry." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1210 (9th Cir. 1998), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016). Under the Securities Exchange Act of 1934, FINRA is required to promulgate rules to protect investors and the public interest, and enforce these rules through disciplinary proceedings and sanctions. *See Krull v. S.E.C.*, 248 F.3d 907, 910 (9th Cir. 2001). The Exchange Act establishes a review process for disciplinary proceedings that encompasses both administrative and judicial review. *See id.* at 909–12; *Swirsky v. Nat'l Ass'n of Sec. Dealers*, 124 F.3d 59, 61–62 (1st Cir. 1997). Administrative appeals proceed directly to the applicable circuit. *See Swirsky*, 124 F.3d at 62 ("The third tier of the process provides for review of final SEC orders by the United States Courts of Appeals.").

     FINRA's duties also "include the duty to 'establish and maintain a system for collecting and retaining registration information' about registered broker-dealers." *Doe v. Fin. Indus. Regulatory Auth., Inc.*, No. CV 13-06436 DDP ASX, 2013 WL 6092790, at *1 (C.D. Cal. Nov. 19, 2013) (quoting 15 U.S.C. § 78*o*–3(i)(1)(A)). "'[R]egistration information' means the information reported in connection with the registration or licensing of brokers and dealers and their associated persons, including disciplinary actions, regulatory, judicial, and arbitration proceedings . . . ." *Id.* § 78*o*-3(i)(3)(5). FINRA fulfills this duty via the CRD database and BrokerCheck. *See Doe*, 2013 WL 6092790, at *1; *Compl.* ¶¶ 10–11; *Opp.* 6. Under FINRA Rule 8312, FINRA shall release information for a "person who was formerly associated with a BrokerCheck Firm, but who has not been associated with a BrokerCheck Firm within the preceding ten years, and was ever the subject of a final regulatory action . . . ." FINRA Rule 8312(c)(1)(A).[1]

     At least four courts have addressed remand in similar FINRA-expungement actions, and all have found that remand was proper. In *In re Lickiss*, the plaintiff sought expungement of "references to certain customer claims and settlements" under California law. No. C-11-1986 EMC, 2011 WL 2471022, at *1 (N.D. Cal. June 22, 2011). FINRA moved to remand, arguing that federal courts had exclusive jurisdiction under 15 U.S.C. § 78aa. *Id.* at *2. Section 78aa states that the "district courts . . . shall have exclusive jurisdiction of . . . all suits in equity and

---

[1] The Securities and Exchange Commission ("SEC") oversees FINRA under the Exchange Act and approves FINRA rules before they are implemented. *See* 15 U.S.C. § 78s(b); *Opp.* 4. FINRA Rules can be found online at http://finra.complinet.com/en/display/display.html?rbid=2403&element_id=607.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2776 PSG (PJWx) | Date | August 9, 2016 |
|---|---|---|---|
| Title | Philip Godfrey v. Financial Industry Regulatory Authority, Inc. | | |

actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." 15 U.S.C. § 78aa(a). The *Lickiss* court explained that although FINRA has a duty to collect and retain registration information, it has no corresponding duty to expunge. *Id.* at *3. The Court also noted that FINRA Rule 2080, which states in relevant part that "[m]embers or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief," "sets forth procedures, not a substantive duty," and seems to contemplate an action in state court due to the use of the phrase "court of competent jurisdiction." *Id.* at *4. The Court thus found that there was no exclusive jurisdiction for expungement actions under state law, and remanded the case for lack of subject matter jurisdiction. *Id.*

The plaintiff in *Spalding v. Financial Industry Regulatory Authority, Inc.* sought expungement of customer-dispute information under Georgia law. No. 1:12-CV-1181-RWS, 2013 WL 1129396, at *1–2 (N.D. Ga. Mar. 19, 2013). FINRA offered two theories of federal jurisdiction this time—that federal courts had exclusive jurisdiction under § 78aa because expungement implicated a duty, and that the suit would require the state court to interpret federal law (which was identified as Rule 2080). *Id.* at *2–3. Citing *Lickiss*, the *Spalding* court found that there was no exclusive jurisdiction because there was no duty to expunge under the Exchange Act or Rule 2080. *Id.* at *3–5. The court also rejected FINRA's argument that substantial federal issues were implicated because expungement would require "a reading and interpretation of Rule 2080" and involved a "comprehensive federal regulatory scheme in which FINRA plays an integral role in enforcing the 1934 Act and regulating participants in the securities industry." *Id.* at *5. The court explained that nothing in the expungement action would require interpretation of Rule 2080, and that the existence of a compressive federal regulatory scheme was insufficient on its own to establish federal jurisdiction. *Id.* at *5–6. The Court thus remanded the case for lack of subject matter jurisdiction. *Id.* at *6.

*Doe*, like *Lickiss*, addressed the expungement of customer-dispute information under California law. 2013 WL 6092790, at *1. FINRA again argued that federal courts have exclusive jurisdiction over expungement of customer-dispute information, and that the case involved substantial issues of federal law. *Id.* at *2–3. Citing *Lickiss*, the *Doe* court held that there was no duty to expunge that would trigger exclusive jurisdiction. *Id.* Citing *Spalding*, the court also held that there was no substantial issue of federal law implicated because the plaintiff "d[id] not claim that FINRA failed to fulfill any particular duty or that FINRA's rules are facially invalid," and "no determination [would need to] be made by the [state court] as to whether FINRA was required to remove the disclosures under the circumstances in determining

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2776 PSG (PJWx) | Date | August 9, 2016 |
|---|---|---|---|
| Title | Philip Godfrey v. Financial Industry Regulatory Authority, Inc. | | |

whether expungement is appropriate in this case." *Id.* at *3. The court therefore remanded the case. *Id.* at *4.

The most recent case cited by the parties, *Flowers v. Financial Industry Regulatory Authority, Inc.*, addressed expungement under California law for regulatory information. No. 15CV2390 DMS (JMA), 2015 WL 9487450, at *1 (S.D. Cal. Dec. 24, 2015). FINRA again moved to remand on the ground that federal courts had exclusive jurisdiction and that substantial issues of federal law were implicated. *Id.* at *1–3. FINRA attempted to distinguish the expungement at issue in *Flowers* from the expungements in *Lickiss*, *Spalding*, and *Doe*, arguing that those plaintiffs sought to remove customer-dispute information, while the *Flowers* plaintiff sought to expunge final regulatory information. *Id.* at *1–2. The court was unpersuaded. Citing *Lickiss*, *Spalding*, and *Doe*, the court found that there was no duty implicated that would lead to exclusive jurisdiction. *Id.* at *1–2. The court explained that *Lickiss* and *Doe* did not "rel[y] on the type of information at issue in reaching the conclusion that federal question jurisdiction was lacking," so their reasoning applied equally to the *Flowers* plaintiff's request. *Id.* at *2. The court also found there were no substantial issues of federal law implicated for the reasons set forth in *Spalding* and *Doe*. *Id.* at *3. The Court noted that FINRA had offered a third theory, complete preemption, but declined to address it because the theory was not included in the notice of removal. *Id.* at *3 n.2. The court therefore remanded the case for lack of subject matter jurisdiction. *Id.* at *3.

    B.    <u>Federal Jurisdiction in this Case</u>

The Court now turns to whether federal jurisdiction exists in this case.

        i.    *Substantial Issue of Federal Law Implicated*

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013). FINRA argues that Godfrey's complaint necessarily raises federal issues because he challenges the "validity and propriety of FINRA's sanctions following FINRA's regulatory action against him, and the publication of the sanctions imposed"; that federal issues are disputed because "the parties dispute whether FINRA's regulatory actions were proper, and dispute whether FINRA Rule 2080 . . . applies to this case"; that federal issues are substantial because a court will be required "to determine whether a broker sanction in a FINRA disciplinary proceeding may challenge that sanction in state court, or whether such a challenge may only be brought in the administrative process mandated by Congress"; and that federal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2776 PSG (PJWx) | Date | August 9, 2016 |
|---|---|---|---|
| Title | Philip Godfrey v. Financial Industry Regulatory Authority, Inc. | | |

jurisdiction would not disturb the federal state balance because the interpretation and application of SEC-approved rules and duties are issues of "paramount federal concern." *Opp.* 11–15.

The parties focus heavily on the application of FINRA Rule 2080. In Godfrey's cause of action for expungement, he states that "[FINRA]'s Rule 2080(a) provides that a court of 'competent jurisdiction' may expunge information disclosed in Defendant's CRD." *Compl.* ¶ 21; *see also id.* ¶ 22. Similarly, he argues in his motion to remand that FINRA Rule 2080 explicitly covers the information listed for him on FINRA's CRD. *Mot.* 12–16. FINRA, in contrast, argues that Rule 2080 is solely limited to customer-complaint information on CRD, and distinguishes *Lickiss*, *Spalding*, and *Doe* because they addressed expungement in the context of Rule 2080. *Opp.* 13 n.4, 15–19. Although the Court agrees with FINRA that Godfrey's attempt to fit the regulatory information at issue in this case into Rule 2080 is unpersuasive, *see, e.g.*, *Buscetto v. Fin. Indus. Regulatory Auth.*, No. CIV.A. 11-6308 JAP, 2012 WL 1623874, at *3–4 (D.N.J. May 9, 2012) (explaining that Rule 2080 does not apply to expungement of final regulatory actions), this is of little help to FINRA because the Court also agrees with the *Flowers* court that the analysis in *Lickiss*, *Spalding*, and *Doe* did not rely on the type of information at issue and was not predicated on the existence of Rule 2080. *See* 2015 WL 9487450, at *2–3.

Rather, the pertinent issue is the extent to which Godfrey's expungement claim requires a court to delve into, and decide issues related to, the regulatory framework established by the Exchange Act and FINRA's rules. *See In re: Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, No. CV1509996BROJEMX, 2016 WL 1192642, at *3 (C.D. Cal. Mar. 28, 2016) ("[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." (quoting *Lippitt*, 340 F.3d at 1040)). FINRA contends that the Exchange Act and FINRA rules establish a complex and thorough system for discipline and regulation, which includes an administrative process and a judicial process through which a person can challenge disciplinary decisions and sanctions made by FINRA, and that Godfrey's lawsuit necessarily requires a court to enter into this system because he is seeking to expunge a final regulatory action. *Opp.* 4–7, 11–15. FINRA contends that *Flowers*, the only other court to address the expungement of regulatory information, erred by "fail[ing] to discern the difference between final regulatory actions and customer complaints and the governing FINRA rules." *Id.* 13 n.4.

FINRA first argues that FINRA has a duty to permanently maintain and publish final regulatory actions, citing 15 U.S.C. § 78*o*-3(i)(1) and FINRA Rule 8312. *See Opp.* 2, 6, 13, 15. Section § 78*o*-3(i)(1) is the overarching rule that FINRA must "establish and maintain a system for collecting and retaining registration information." 15 U.S.C. § 78*o*-3(i)(1)(A). This rule,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2776 PSG (PJWx) | Date | August 9, 2016 |
|---|---|---|---|
| Title | Philip Godfrey v. Financial Industry Regulatory Authority, Inc. | | |

however, says nothing about a corresponding duty to expunge information available from the CRD. *See Doe*, 2013 WL 6092790, at *2–3; *Spalding*, 2013 WL 1129396, at *1–2; *Lickiss*, 2011 WL 2471022, at *3. Rule 8312 elaborates on the information FINRA must make available via BrokerCheck. Section (c)(1) states that FINRA shall release specified information for a person who was associated with a BrokerCheck firm more than ten years prior and was the subject of a final regulatory action. Rule 8312(c)(1); *see also Order Approving Proposed Rule Change to FINRA BrokerCheck Disclosure*, 75 Fed.Reg. 41254–41257 (July 8, 2010) ("BrokerCheck allows the public to obtain certain limited information regarding formerly associated persons, regardless of the time elapsed since they were associated with a member, if they were the subject of any final regulatory action."). FINRA repeatedly frames Rule 8312(c)(1) as requiring that final regulatory actions be "permanently" available. *See Opp*. 6, 13 n.4, 15. In a sense, this statement is accurate, as Rule 8312(c)(1) clearly establishes that information relating to a person with the described characteristics has no expiration date on the CRD. But the Court fails to see how Rule 8312 is any different than § 78*o*-3(i)(1)(A); it requires the maintenance and availability of certain information, but says nothing about any FINRA duty to expunge this information.

FINRA next argues that the permanent availability of this information was an understood sanction in the 1988 settlement, and that Godfrey's expungement claim is an attempt to loosen his sanctions without going through the required administrative and judicial processes. *Opp*. 2–3, 12–13. FINRA submits Godfrey's settlement and related documents as an exhibit, *see Dettmer Decl.*, Ex. A,[2] and notes that Godfrey agreed to be censured, permanently barred in all capacities from associating with any FINRA member, and fined $15,000, and understood that FINRA would report this bar. *Opp*. 2, 7, 12. But although the settlement clearly indicates that Godfrey knew that the information regarding the settlement would be maintained and available to the public, the Court sees nothing to suggest that the sanctions included the permanent maintenance and availability of that information, such that an expungement action would require the state court to inquire into the validity or propriety of the 1988 settlement. *See Doe*, 2013 WL 6092790, at *3 (rejecting an argument that substantial federal issues were implicated because Plaintiff's claim would not require an examination of FINRA's conduct).[3]

---

[2]   FINRA does not address why it is proper for the Court to consider this exhibit. Courts, however, have considered extrinsic evidence when a motion to remand challenges subject matter jurisdiction. *See, e.g.*, *Prime Healthcare Servs. - Shasta, LLC v. Sierra Pac. Indus.*, No. 2:15-CV-2007-CMK, 2016 WL 740529, at *2 (E.D. Cal. Feb. 25, 2016). In any event, Godfrey does not object to the consideration of this evidence.

[3]   In *Buscetto*, the District of New Jersey granted a motion to dismiss an expungement claim on the grounds that FINRA requires final regulatory information to be permanently published,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2776 PSG (PJWx) | Date | August 9, 2016 |
|---|---|---|---|
| Title | Philip Godfrey v. Financial Industry Regulatory Authority, Inc. | | |

Finally, FINRA argues that Godfrey's expungement claim is actually an attempt to vitiate his other sanctions. *Opp.* 2, 12–13. As part of his allegations for expungement, Godfrey states:

> Plaintiff anticipates the need to register with Defendant in order to become associated with member firms in the future. Consequently, Plaintiff's present disqualification from registering with Defendant harms his employment prospects.

*Compl.* ¶ 24. Godfrey now argues that he "is not yet seeking association with a registered FINRA member, and would not obtain such relief as a result of the state court expungement action." *Mot.* 10. Although the Court agrees with FINRA that the statement in paragraph 24 is completely out of place in the expungement action, it agrees with Godfrey, for the reasons discussed above, that the state-court expungement action would have nothing to do with Godfrey's ability to register with FINRA or avoid any other sanction included in the 1988 settlement. The Court thus declines to read paragraph 24 as somehow morphing Godfrey's expungement claim into a foray into the Exchange Act and FINRA rules. *See Hunter*, 582 F.3d at 1042 (explaining that the "strong presumption" against removal means that the court "resolves all ambiguity in favor of remand to state court"); *Lippitt*, 340 F.3d at 1041 (rejecting the argument that an unnecessary discussion of a federal issue in a complaint turned a state-law case into a federal case).

In short, the Court agrees with the *Flowers* court that the analysis in *Lickiss*, *Spalding*, and *Doe* applies equally to the expungement of a final regulatory action, and declines to find that this case implicates a substantial federal issue.

### ii. Complete Preemption

Complete preemption provides that "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243 (9th Cir. 2009) (citation omitted). "[I]f a federal cause of action completely preempts a state cause of action[,]

---

the plaintiff agreed to that punishment in his settlement, and there is no federal authority for the expungement of a final disciplinary order from the CRD. 2012 WL 1623874, at *3–4. *Buscetto*, however, did not make this determination in the context of a motion to remand, as the plaintiff did not contest FINRA's removal. *Id.* at *1–2. *Buscetto* also did not determine whether CRD information could be expunged under state law. Finally, to the extent *Buscetto* reads the relevant statutory law and FINRA rules in a manner different than this Court, the Court finds *Buscetto* unpersuasive for the reasons discussed in the text.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2776 PSG (PJWx) | Date | August 9, 2016 |
|---|---|---|---|
| Title | Philip Godfrey v. Financial Industry Regulatory Authority, Inc. | | |

any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Id.* at 1243–44 (quoting *Franchise Tax Bd.*, 463 U.S. at 24). "Complete preemption is a limited doctrine that applies only where a federal statutory scheme is so comprehensive that it entirely supplants state law causes of action." *Dennis v. Hart*, 724 F.3d 1249, 1254 (9th Cir. 2013). FINRA claims that its "process for broker registration and regulation completely preempts [Godfrey]'s state law claim." *Opp.* 7. As noted, this theory was not discussed by *Lickiss*, *Spalding*, *Doe*, or *Flowers*. *See supra* Section III.A.[4]

Courts considering preemption under the Exchange Act have rejected complete preemption. *See Dennis*, 724 F.3d at 1254 ("Nothing in the Exchange Act generally or Section 78n–1 specifically suggests that Congress intended to totally displace state law. On the contrary, we have recognized that the Exchange Act does not so fully displace state law as to invoke complete preemption."); *Lippitt*, 340 F.3d at 1042 ("We conclude that the Exchange Act does not create exclusive jurisdiction for any and all actions that happen to target false advertising and deceptive sales practices in the sale of callable CDs. . . . Nothing in the Exchange Act stands for such a sweeping proposition."). In a similar vein, the Supreme Court recently noted that the Exchange Act leaves room for securities actions in state court. *See Merrill Lynch*, 136 S. Ct. at 1574 ("And indeed, Congress likely contemplated that some complaints intermingling state and federal questions would be brought in state court: After all, Congress specifically affirmed the capacity of such courts to hear state-law securities actions, which predictably raise issues coinciding, overlapping, or intersecting with those under the Act itself.").

Recognizing this, FINRA states that it is not "argu[ing] that the Exchange Act preempts the entire field of securities law," but rather that "the regulation and discipline of registered securities representatives by self-regulatory organizations such as FINRA is completely preempted by federal law." *Opp.* 10. This concession, however, creates an immediate problem for FINRA; the Court already determined, in the previous section, that an expungement action in state court does not involve an analysis of FINRA's regulatory process. *See supra* Section III.B.*i.* In other words, even assuming that the regulation and discipline of registered securities representatives by FINRA completely preempted state law, this case would not fall under that purview. This is reason alone to reject complete preemption as a basis for removal.

At least two other reasons counsel against a determination that complete preemption supports removal. First, FINRA glosses over that a different type of preemption, conflict

---

[4] Godfrey argues that the Court should not even consider complete preemption because FINRA did not sufficiently discuss it in its notice of removal. *Mot.* 5–7. The Court disagrees. *See Notice of Removal* 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2776 PSG (PJWx) | Date | August 9, 2016 |
|---|---|---|---|
| Title | Philip Godfrey v. Financial Industry Regulatory Authority, Inc. | | |

preemption, may be more appropriate. "Under conflict preemption, Congress's intent to preempt state law is implied to the extent that federal law actually conflicts with any state law. Conflict preemption analysis examines the federal statute as a whole to determine whether a party's compliance with both federal and state requirements is impossible or whether, in light of the federal statute's purpose and intended effects, state law poses an obstacle to the accomplishment of Congress's objectives." *Whistler Invs., Inc. v. Depository Trust & Clearing Corp.*, 539 F.3d 1159, 1164 (9th Cir. 2008) (citation omitted). The distinction matters here because a defense of conflict preemption is "an insufficient basis for original federal question jurisdiction under § 1331(a) and removal jurisdiction under § 1441(a)." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (explaining the differences, in the context of remand, between complete preemption and conflict preemption). Indeed, the Ninth Circuit has held that rules adopted by self-regulating organizations like FINRA have preemptive effect under the Exchange Act under a theory of conflict preemption. *See Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1128–36 (9th Cir. 2005). The Court is thus troubled by FINRA's failure to address why complete preemption is a more appropriate preemption theory than conflict preemption.

Second, FINRA specifically highlights and addresses two cases in its complete preemption analysis—*Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003), and *Peters v. Union Pacific Railroad Company*, 80 F.3d 257 (8th Cir. 1996). *Opp.* 8–9. In *Beneficial National Bank*, the Supreme Court held that complete preemption occurs where the federal statute "provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." 539 U.S. at 8–9. In *Peters*, the Eighth Circuit determined that remand was improper for a state-law conversion claim because the Federal Railroad Safety Act completely preempted state law for the refusal to issue a locomotive engineer certification card, and then granted a motion to dismiss because the plaintiff had failed to exhaust his administrative remedies. 80 F.3d at 261–63. FINRA contends that "[t]he statutory and administrative scheme here is the same in all material respects as the statutory and administrative schemes in *Beneficial National Bank* and *Peters*, and the result should be the same as well." *Opp.* 9.

The problem is that these cases may in fact support the opposite position. FINRA has filed a separate motion to dismiss, arguing that the Court lacks jurisdiction to hear this case because the Exchange Act and FINRA set up the sole mechanism for administrative and judicial review, which requires the exhaustion of administrative remedies followed by a direct appeal to the circuit court. Dkt. #18; *see also supra* Section III.A. But the Ninth Circuit has held that *Beneficial National Bank* cautions against complete preemption where the federal statute does not provide an exclusive federal cause of action:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2776 PSG (PJWx) | Date | August 9, 2016 |
|---|---|---|---|
| Title | Philip Godfrey v. Financial Industry Regulatory Authority, Inc. | | |

In *Sullivan v. American Airlines*, 424 F.3d 267 (2d Cir. 2005), the Second Circuit concluded that the Supreme Court's decision in [*Beneficial National Bank*] clarified that complete pre-emption does not apply under the [Railway Labor Act, or "RLA"]. *Sullivan*, 424 F.3d at 275. The Second Circuit cited the Supreme Court's observation in *Beneficial National Bank* to the effect that "'[i]n the two categories of cases where this Court has found complete preemption—certain causes of action under the [Labor Management Relations Act, or "LMRA"] and [Employee Retirement Income Security Act, or "ERISA"]—the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.'" *Sullivan*, 424 F.3d at 275 (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8 (emphasis added)). According to the Second Circuit, "[h]ad [*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994)] established that § 184 of the RLA, like § 301 of the LMRA, completely preempted state-law causes of action within its scope, the Court in *Beneficial National Bank* would have discussed three, not two, categories of cases involving complete preemption." *Id.*

Although the Supreme Court in *Beneficial National Bank* actually added a third category of cases requiring complete pre-emption by holding that the National Bank Act, 12 U.S.C. §§ 85–86, completely pre-empts state usury claims, *Beneficial Nat'l Bank*, 539 U.S. at 11, we are persuaded by the reasoning of *Sullivan*, and likewise hold that the RLA is not subject to complete pre-emption. Our holding is buttressed by the Supreme Court's explanation that a federal statute must provide the "exclusive cause of action" for complete pre-emption to apply:

> Does the National Bank Act provide the exclusive cause of action for usury claims against national banks? If so, then the cause of action necessarily arises under federal law and the case is removable. If not, then the complaint does not arise under federal law and is not removable.

*Beneficial Nat'l Bank*, 539 U.S. at 9. Accordingly, even though the petitioners' removal petition in *Beneficial National Bank* demonstrated that § 85 of the National Bank Act would provide a complete federal defense, removal was proper only in light of the "Court's longstanding and consistent construction of the National Bank Act as providing an exclusive federal cause of action for usury against national banks." *Id.* at 10.

By contrast, the RLA does not provide an exclusive federal cause of action. Rather than allowing disputes between airlines and their employees that "grow [ ] out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2776 PSG (PJWx) | Date | August 9, 2016 |
|---|---|---|---|
| Title | Philip Godfrey v. Financial Industry Regulatory Authority, Inc. | | |

> working conditions" to be filed initially in federal court, the RLA instead requires
> submission of such disputes to internal dispute-resolution processes and then to a division
> of the National Adjustment Board or an arbitration board selected by the parties. 45
> U.S.C. §§ 153 and 184. Only after "the grievance has been heard by the adjustment board
> [does] exclusive jurisdiction rest[ ] with the federal court." *Schroeder v. Trans World
> Airlines, Inc.*, 702 F.2d 189, 192 (9th Cir. 1983).
>
> Given the Supreme Court's ruling in *Beneficial National Bank*, it is clear that the district
> court erred when it assumed that the RLA is subject to complete rather than ordinary pre-
> emption in holding that removal was proper. *See* 15 Moore's Federal Practice §
> 103.45[3][b] (3d ed. 2008) (citing *Beneficial National Bank* for the proposition that:
> "[T]he Railway Labor Act . . . does not completely preempt state law claims arising out of
> railroad labor disputes and, therefore, does not provide a ground for removal of such
> claims to federal court. The Act does not provide a federal cause of action, without which
> complete preemption . . . cannot exist.").

*Moore-Thomas*, 553 F.3d at 1244–46 (footnote omitted). The Eighth Circuit has similarly cautioned against an overbroad reading of *Peters* in light of *Beneficial National Bank*. *See Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 252 (8th Cir. 2012). The Court is troubled by FINRA's failure to address the *Moore-Thomas* interpretation of *Beneficial National Bank*, especially because it seems that the regulatory and disciplinary system described by FINRA is similar to the system that *Moore-Thomas* found insufficient for complete preemption.

The Court thus finds that the theory of complete preemption does not support removal of Godfrey's state-court action.

C.      Attorney's Fees

Under 28 U.S.C. § 1447, the Court can "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005)). Godfrey requests attorney's fees of $13,746. *Mot.* 16–17. Although the Court notes that FINRA is now 0 for 5 (counting *Lickiss*, *Spalding*, *Doe*, *Flowers*, and this case), and FINRA's counsel is now 0 for 4 (as lead counsel here was also the lead counsel in *Lickiss*, *Doe*, and *Flowers*), the Court will not award attorney's fees. FINRA had at least one new legal theory in this case (complete preemption), and argued that the only other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2776 PSG (PJWx) | Date | August 9, 2016 |
|---|---|---|---|
| Title | Philip Godfrey v. Financial Industry Regulatory Authority, Inc. | | |

court to address final regulatory actions (*Flowers*) erred. The Court disagrees with FINRA's arguments, but does not find them objectively unreasonable.

IV.     Conclusion

The Court therefore GRANTS the motion and REMANDS the case.

**IT IS SO ORDERED.**